**Alec G. OLSON, et al., Appellants,**

v.

**STATE of Minnesota, et al., Respondents.**

No. A06–2324.

Court of Appeals of Minnesota.

Dec. 18, 2007.

Kay Nord Hunt, John P. James, Stephen C. Rathke, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN, for appellants.

Lori Swanson, Attorney General, Rita Coyle Demeules, Assistant Attorney General, St. Paul, MN, for respondents.

Considered and decided by DIETZEN, Presiding Judge; RANDALL, Judge; and HALBROOKS, Judge.

## OPINION

HALBROOKS, Judge.

Appellants Alec G. Olson and Butterworth Limited Partnership challenge the district court's dismissal based on lack of standing. Appellants sought declaratory and injunctive relief against respondents State of Minnesota; Matthew Kramer, Commissioner of the Minnesota Department of Employment and Economic Development; and Daniel A. Salomone, Commissioner of the Minnesota Department of Revenue, seeking to bar respondents from acting as authorized by the Job Opportunity Building Zone Program and the Biotechnology and Health Sciences Industry Zone Program. Because appellants have no injury-in-fact, we conclude that they lack standing as taxpayers and affirm.

## FACTS

In 2003, the Minnesota Legislature passed legislation creating the Job Oppor-

tunity Industry Building Zones Program (JOBZ) and the Biotechnology and Health Sciences Industry Zone Program (BHSIZ). Minn.Stat. §§ 469.310–469.3201, 469.330–469.341 (2006). These programs are designed to promote economic development and encourage business expansion through tax benefits and tax exemptions.[1] Both programs also offer "jobs credits" that are refundable if an eligible business cannot use the credits to offset an existing tax liability. *See* Minn.Stat. §§ 469.318, 469.338.

Appellant Olson is a Minnesota resident who pays property, income, and sales tax in Minnesota. Appellant Butterworth Limited Partnership is a limited partnership that pays local property and state sales tax in Minnesota. Both appellants challenge the constitutionality of the JOBZ and BHSIZ programs solely on their status as taxpayers of local and state taxes. Appellants have not been rejected, nor have they applied for entry into either program. After all parties stipulated to the facts, cross-motions for summary judgment were filed with the district court. Respondents argued that appellants' claims should be dismissed for lack of standing. The district court agreed, denied appellants' motion for summary judgment, and granted respondents' motion. This appeal follows.

## ISSUE

Did the district court err when it granted summary judgment in favor of respondents on the ground that appellants lack standing to challenge the constitutionality of Minn.Stat. §§ 469.310–469.3201, 469.330–469.341 (2006)?

---

1. The BHSIZ property tax exemptions have since been repealed. *See* 2005 Minn. Laws 1st Spec. Sess. ch. 3, art. 7, § 20, at 2413 (repealing Minn.Stat. § 272.02, subd. 65 (2004)).

## ANALYSIS

Appellants argue that as taxpayers, they have standing to challenge the constitutionality of the JOBZ and BHSIZ programs because (1) they pay property tax; (2) exemption from taxation is a delegation of the taxation power; and (3) actual injury is suffered through higher taxes as a result of exemptions being applied to others.

When the facts relevant to standing are undisputed, the standing inquiry raises a question of law subject to de novo review. *Rukavina v. Pawlenty*, 684 N.W.2d 525, 531 (Minn.App.2004), *review denied* (Minn. Oct. 19, 2004). A standing analysis focuses on whether the plaintiff is the proper party to bring a particular lawsuit. *Id.* To establish standing, a plaintiff must have a sufficient personal stake in a justiciable controversy. *State by Humphrey v. Philip Morris Inc.*, 551 N.W.2d 490, 493 (Minn.1996). A sufficient stake may exist if the party has suffered an "injury-in-fact" or if the legislature has conferred standing by statute. *Id.*

Absent express statutory authority, taxpayer suits in the public interest are generally dismissed unless the taxpayers can show some damage or injury to the individual bringing the action which is special or peculiar and different from damage or injury sustained by the general public. *Conant v. Robins, Kaplan, Miller & Ciresi, L.L.P.*, 603 N.W.2d 143, 146 (Minn.App. 1999) (quotation omitted), *review denied* (Minn. Mar. 14, 2000). Taxpayers without a personal or direct injury may still have standing but only to maintain an action that restrains the "unlawful disbursements of public money ... [or] illegal action on the part of public officials." *McKee v. Likins*, 261 N.W.2d 566, 571 (Minn.1977) (quotation omitted); *see also Arens v. Vill. of Rogers*, 240 Minn. 386, 392, 61 N.W.2d 508, 514 (1953) (stating that taxpayers have standing to challenge the constitu-

tionality of establishment of a municipal liquor store pursuant to statute).

[W]hile the activities of governmental agencies engaged in public service ought not to be hindered merely because a citizen does not agree with the policy or discretion of those charged with the responsibility of executing the law, the right of a taxpayer to maintain an action in the courts to restrain the unlawful use of public funds cannot be denied.

*McKee*, 261 N.W.2d at 571. While Minnesota law establishes that taxpayer standing has clear limitations, appellants argue for a more broad taxpayer-standing rule. But precedent does not support appellants' argument.

In contrast with standing rules in federal courts, it is generally recognized that a Minnesota taxpayer has a broader basis for standing than a litigant in federal court. *Id.* at 570. As early as 1888, the Minnesota Supreme Court held that taxpayers may bring an action to compel county officers to perform their public duties. *State ex rel. Currie v. Weld*, 39 Minn. 426, 428, 40 N.W. 561, 562 (1888). In 1928, the Minnesota Supreme Court stated, "it is well settled that a taxpayer may, when the situation warrants, maintain an action to restrain unlawful disbursements of public moneys." *Oehler v. City of St. Paul*, 174 Minn. 410, 417–18, 219 N.W. 760, 763 (1928).

As taxpayer standing case law developed in Minnesota, it became clear that this broader allowance is not limitless. In *State ex rel. Smith v. Haveland*, the Minnesota Supreme Court held that a claimant has no standing as a taxpayer when he attempts to seek declaratory relief to establish his right to pay a tax in contrast to a challenged exemption. 223 Minn. 89, 93, 25 N.W.2d 474, 477 (1946). In 1977, our supreme court again affirmed that the line is drawn where a taxpayer seeks to challenge what the taxpayer per-

ceives to be an illegal expenditure or waste of tax monies. *St. Paul Area Chamber of Commerce v. Marzitelli*, 258 N.W.2d 585, 588 (Minn.1977).

In *Marzitelli*, the plaintiffs challenged a statute that prohibited further construction of highways. *Id.* at 587. The Minnesota Supreme Court noted that this case was different from those in which a plaintiff has standing to challenge illegal expenditures of public funds and held that the claimants lacked standing to challenge the legislative action that only limited future expenditures. *Id.* at 589–90.

The supreme court has also more recently reaffirmed the requirement that the party seeking to challenge legislative action on the basis of his status as a taxpayer must have more than just a disagreement with a discretionary decision. *See In re Sandy Pappas Senate Comm.*, 488 N.W.2d 795, 798 (Minn.1992) (finding that a citizen did not have standing solely as a taxpayer to file a claim seeking judicial review of an election board's disposition of a campaign violation).

In *Rukavina*, we acknowledged that taxpayer status alone does not confer standing. 684 N.W.2d at 531. Simple "disagreement with policy or the exercise of discretion by those responsible for executing the law" does not supply the "unlawful disbursements" or "illegal action" of public funds required for standing to support a taxpayer challenge. *Id.* When the taxpayer's individual challenges to the state action "are based primarily on appellants' disagreement with policy or the exercise of discretion by those responsible for executing the law," they are insufficient to confer standing. *Id.*

Here, appellants are challenging the constitutionality of statutes based on an assertion that exemption from taxation will result in an increase in tax burden on them. Although appellants argue that they have standing to challenge legislative actions that create an increase in overall tax burden, there must still be a link between that challenge and an illegal expenditure of tax monies. *Conant*, 603 N.W.2d at 147. While taxpayers have a real and definite interest in challenging such illegal expenditures, there are no such expenditures here. *See Arens*, 240 Minn. at 392–93, 61 N.W.2d at 514 (discussing *Haveland*, 223 Minn. 89, 25 N.W.2d 474, as stating that a taxpayer's constitutional challenge to a statute that exempts money from taxation is not a legally protectable interest but merely an academic interest).

Appellants also contend that *Metro. Sports Facilities Comm'n v. County of Hennepin*, 451 N.W.2d 319 (Minn.1990), establishes their standing as taxpayers to challenge a tax exemption when property taxes are implicated in the exemption. Although *Metro. Sports* does deal with exemptions, it concerns standing of a government official challenging legislation. 451 N.W.2d at 322. The proper party to challenge an exemption on behalf of the public and in the public's interest is a government official, not a private citizen. *Id.*; *Conant*, 603 N.W.2d at 146. Here, appellants are private citizens with no injury-in-fact and no evidence of an expenditure made as a result of the challenged statutes. Because appellants lack an injury-in-fact and can point to no illegal expenditure or waste of tax monies, the limitations on taxpayer standing support the district court's dismissal of appellant's claims.

## DECISION

Because appellants lack injury-in-fact sufficient to support standing solely as taxpayers, the district court properly dismissed appellants' claims.

**Affirmed.**