HUDSON, Judge
(concurring specially).
I agree with the majority that the petitioners are not entitled to a declaration that the challenged rule is invalid. But I write separately because I would not reach the merits of this petition and would instead conclude that petitioners lack standing to challenge the validity of the rule in a pre-enforcement proceeding.
Standing is a doctrine encompassed by the broad concept of justiciability, which relates “to the court’s ability to redress an injury through coercive relief.” State ex rel. Sviggum v. Hanson, 732 N.W.2d 312, 321 (Minn.App.2007). “The concept of jus-ticiability forms a threshold for judicial action and requires, in addition to adverse interests and concrete assertions of rights, a controversy that allows for specific relief by a decree or judgment of a specific character as distinguished from an advisory opinion predicated on hypothetical facts.” Id. The purpose of the standing requirement is to ensure that issues before the courts will be “vigorously and adequately presented.” State by Humphrey v. Philip Morris Inc., 551 N.W.2d 490, 493 (Minn.1996) (quotation omitted). “When a lawsuit presents no injury that a court can redress, the case must be dismissed for lack of justiciability.” Hanson, 732 N.W.2d at 321. Though the DNR does not meaningfully contest petitioners’ standing in this matter, the issue of standing is essential to this court’s consideration of a case; thus, we may raise the issue of standing by our own accord. Annandale Advocate v. City of Annandale, 435 N.W.2d 24, 27 (Minn.1989).
In a pre-enforcement challenge to an administrative rule, a petitioner possesses standing only when “the rule, or its threatened application, interferes with or impairs, or threatens to interfere with or impair the legal rights or privileges of the petitioner.” Minn.Stat. § 14.44 (2014). The petitioner’s “direct interest” in the validity of the challenged rule must be “different in character from the interest of the citizenry in general.” Rocco Altobelli, Inc. v. State, Dept. of Commerce, 524 N.W.2d 30, 34 (Minn.App.1994) (quotation omitted). An organization whose members claim such an interest may file suit “to redress injuries ... to its members.” Philip Morris Inc., 551 N.W.2d at 497-98.
Petitioners’ primary contention regarding standing is that they engage in, or have members who engage in, hunting and fishing activities that are relevant to the cultural heritage of Mille Lacs Lake and the sustainability of walleye fishing, which they assert are rights protected by article XIII, section 12, of the Minnesota Constitution. They argue that any rule that inhibits their cultural heritage to hunt and fish constitutes an injury-in-fact sufficient to provide them standing. Petitioners also contend that they possess taxpayer standing to challenge the emergency rules and maintain that Twin Pines Resort, Inc. (the resort), retains standing to challenge the emergency rule because the resort will suffer economic injury from enforcement of the rule.
These arguments are not persuasive. I agree that hunting and fishing are significant aspects of Minnesota’s culture and heritage, that the Preservation Provision emphasizes the importance of these rights to the public, and that Minnesota citizens may seek protection of their right to hunt and fish via judicial action in certain in *854 stances. See e.g., Minn.Stat. § 97A.420 (2014) (governing seizure of hunting and fishing licenses and process for administrative and judicial review). But here, we are confronted with a pre-enforcement challenge to an administrative rule governing hunting and fishing, a proceeding that necessitates a stricter standard of review. Minn. Chamber of Commerce v. Minn. Pollution Control Agency, 469 N.W.2d 100, 102-08 (Minn.App.1991), review denied (Minn. July 24, 1991). Thus, to establish standing in a pre-enforcement challenge, a petitioner must assert more than “a mere possibility of an injury or mere interest in a problem.” Coalition of Greater Minn. Cities v. Minn. Pollution Control Agency, 765 N.W.2d 159, 163 (Minn.App.2009), review denied (Minn. Aug. 11, 2009). Rather, the petitioner bringing the action must demonstrate that the “rule is or is about to be applied to the petitioner’s disadvantage.” Id.
Here, the rule does not prohibit petitioners from fishing, but imposes various restrictions on the size and number of fish that petitioners may harvest.[1] Petitioners do not demonstrate that these limitations are certain to cause them harm or injury. They do not claim that they will necessarily exceed the harvest limits established by the rule or assert that they previously possessed the right to harvest an unlimited number of fish from the lake. Petitioners also do not claim that they planned to harvest more fish than permitted by the rule or assert that they have been subject to criminal or civil sanction for violation of these limits. In fact, petitioners identify no harm that is unique to them as opposed to the citizenry in general. Moreover, petitioners have not established that they are without remedy if the rule is subsequently enforced against them; it is possible that they may challenge the validity of the rule in a subsequent judicial or administrative proceeding. Because the harm that petitioners claim amounts only to “mere interest” in a problem, I would conclude that the claimed injury is insufficient to establish standing. See id.
Likewise, petitioners lack taxpayer standing to challenge the validity of the rule. A taxpayer without personal or direct injury possesses standing to “maintain an action that restrains the ‘unlawful disbursements -of public money ... [or] illegal action on the part of public officials.’ ” Olson v. State, 742 N.W.2d 681, 684 (Minn.App.2007) (alteration in original) (quotation omitted). But the party asserting taxpayer standing must identify an unlawful “expenditure made as a result of the challenged [rules].” Id. at 685 (holding that challenge to tax exemption could not be pursued solely on taxpayer basis because it did not involve expenditure of tax funds). Petitioners do not identify any illegal expenditure made by the DNR; they do not claim that the rule or the emergency expedited rulemaking process led to an unlawful expenditure of public funds. Accordingly, taxpayer standing is inapplicable here. ■ .
Finally, I note that a corporation and its members may possess standing to challenge the validity of a rule when the corporation demonstrates that it has suffered economic injury from enforcement of an administrative rule. See Snyder’s Drug Stores, Inc. v. Minn. State Bd. of Pharmacy, 301 Minn. 28, 32-33, 221 N.W.2d 162, 165-66 (1974) (permitting corporation to file suit on behalf of individual members who suffered economic injury). Here, the resort contends that the fishing restric *855 tions will result in fewer guests patronizing it. I am sympathetic to the possibility that the resort may suffer financial hardship as a result of the fishing restrictions imposed by the rule. But the resort’s allegations establish nothing more than a possibility that the manner in which the rule will be applied will cause economic injury. For the same reasons discussed above, the possibility of economic injury is insufficient to establish standing. See Coalition of Greater Minn. Cities, 765 N.W.2d at 163. Because I do not identify any additional grounds on which petitioners possess standing to bring a pre-en-forcement declaratory judgment action, I would dismiss the petition for lack of standing.

. Because the rule’s ban on night fishing was lifted, I do not consider whether petitioners have standing to challenge this prohibition.